UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MARK J. BACKUS,

       Petitioner,

  v.                                      Civil Action No.
                                                9:04-CV-356 (TJM/GHL)

J. NICHOLS, SUPERINTENDENT,

            Respondent.

---

APPEARANCES:                OF COUNSEL:

FOR PETITIONER:

MARK J. BACKUS, pro se
Mid-State Correctional Facility
P.O. Box 2500
Marcy, New York 13403

FOR RESPONDENT:

HON. ANDREW M. CUOMO        MARIA MORAN, ESQUIRE
Office of the Attorney General     Assistant Attorney General
615 Erie Boulevard West
Suite 102
Syracuse, New York, NY 13204-2455

**GEORGE H. LOWE**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

**I. Introduction**

    Petitioner *pro se* Mark J. Backus (Backus)  is currently an inmate in the

---

     [1] This action has been referred to this Court by Senior Judge McAvoy for a report and recommendation, which this Court now issues pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3(c).

custody of the New York State Department of Correctional Services ("DOCS") at Mid-State Correctional Facility.  He brings this action for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a judgment of conviction rendered on November 17, 2000 in Broome County Court.  Backus alleges four grounds in support of his habeas petition: (1) the prosecutor failed to disclose photographs and the name of a witness prior to trial, and entered into a plea agreement with the cooperating co-defendant in exchange for false testimony (Grounds One and Three); (2) his statement was coerced, and police knew he had an attorney on an unrelated case but proceeded to question him in violation of his rights (Ground Two); and (4) counsel was ineffective (Ground Four)[2].  Respondent has filed his answer, together with a memorandum of law and the pertinent state court records.  For the reasons that follow, it is recommended that the petition be denied.

## II.   Background

On the evening of October 16, 1999, Ann Torto went to Mike's Bar and Grill in Binghamton.  (Trial Transcript ["T"], at 133-34).[3]  She had gotten paid that day and was carrying $150.00 in her wallet, which she kept inside her purse. (T. 133, 138).  Torto saw Backus, whom she had known for approximately eight years, at the bar and spent the evening talking and dancing with him.  (*Id*. at 134-35, 156-57, 196).

---

[2] In Grounds One and Three, Backus's claims appear to relate to the alleged misconduct of the prosecutor.  They will be considered together for the sake of clarity.

[3] Respondent filed the trial transcript along with his amended answer. (Dkt. No. 8, Exhs. J and K).  The page numbers referred to in this Report and Recommendation are the original page numbers appearing in the top right corner of the transcript.

During the evening Torto had between three and four drinks. (T.156-57).  Backus was at the bar with Tonya Jenkins, and he introduced Torto to Jenkins. (*Id*. at 135-36, 195-97).  Backus told Jenkins about the money in Torto's purse (T. 196).

Backus asked Torto if she would lend him money for gas.  Torto said no, and told Backus she did not have the extra money.  (*Id*. at 136-37).  Backus asked again, and this time Torto gave him $5.00 because he seemed aggressive and "eager" for the money. (*Id*.).

Torto left the bar between 2:00 and 3:00 a.m.  (T. 139).  Jenkins and Backus left the bar at around the same time.  Backus's girlfriend was waiting in his car.  She stayed inside the car while Backus and Jenkins were inside the bar because if Backus's car was turned off, it would not start again (T. 197-98).  Backus told Jenkins they should get Torto's money.  (T. 199).  Backus's girlfriend got out of the car and Backus and Jenkins went to look for Torto.  (T. 199).  When Backus spotted Torto near the Giant supermarket, he told Jenkins to get out of the car and ask her for gas money.  Backus told Jenkins that if Torto said no, she should grab her purse.  (T. 200).

Backus pulled up alongside Torto and stopped.  Jenkins got out of the passenger side and asked Torto for gas money. (T. 139-41, 159-61).  Torto declined, and Jenkins said, "give me your purse."  (T. 141, 208-09).  Jenkins grabbed the handle of the purse, and a struggle ensued.  Jenkins struck Torto, threw her to the ground, and stomped on her face.  (T.160-61, 204, 206). Jenkins eventually gained possession of the purse and ran to the car.  Jenkins threw the purse into the

passenger seat while Torto chased her. (T. 142, 200-01).  Torto and Jenkins struggled again as Torto tried to get her purse back.  Backus leaned over to Jenkins and told her to let Torto go because he had the wallet (T. 143, 201).  Torto looked at Backus and asked him why he was doing this to her.  Backus did not respond (T. 154).  Jenkins let Torto go, got into the car, and Backus pulled away.  (T.143).  Backus and Jenkins picked up Backus's girlfriend, and they used the stolen money to buy crack cocaine (T. 201-04).

Jaime Forkey was driving home and passed the Giant Market parking lot at approximately 2:30 a.m. (T. 108).  She witnessed the incident and called 911. (T. 109-10).  Forkey met Torto and the police and gave a statement.  (T. 111-12).

Torto's face was bloody and she was crying.  Her glasses were broken, and she was dirty from struggling on the ground. (T. 111-13, 125-27).  Her left lip was cut and swollen, and she had a bruise from the left side of her nose that extended down her cheekbone.  (T. 143). She also had bruises and scrapes on her left elbow, left knee and left thigh (T. 146-49).  Although she refused treatment at the scene, Torto went to the hospital later that morning, where cold packs were applied to her injuries. (T. 145, 174-79).  Torto was sore the next day on her left side, and experienced pain in her jaw for two to three weeks after the robbery. (T. 150-53).  Torto missed three days of work as a result of her injuries. (T. 153). Torto assumed that all of her property was still inside her purse.  It was not until Officer Christopher Lason arrived and asked her to look through her purse to be certain she had all of her property that she noticed her wallet was missing.  (T. 144-45, 161-62).

4

Detective Gerald Shoemaker met Backus at his probation officer's office on November 16, 1999. He told Backus that he wanted to speak to him about the robbery and asked him to come to the police station. (Dkt. No. 8, Ex. I, Suppression Hearing ["H"], at 20-22). Backus agreed. (H. 22). They walked across the street to the police station, and Shoemaker advised Backus of his *Miranda* rights (H. 23-25). Backus waived his rights and agreed to speak to Shoemaker. (H. 23-25; T. 181-85). Backus stated that Jenkins told him Torto had a lot of money and she was going to "bump" Torto, meaning rob her. (T. 187). Backus admitted that he gave Jenkins a ride and pulled alongside Torto as she was walking home. (T. 187). He initially told Shoemaker that he dropped Jenkins off and drove to a nearby gas station, and Jenkins met him there when the robbery was over. (*Id*.). Shoemaker told Backus that he did not believe that story, and told him that, according to Jenkins, Backus stayed for the robbery (*Id*.). Backus then admitted he was there. He claimed he told Jenkins not to beat Torto up, but that Jenkins did so anyway and took $140.00. He also stated that he and Jenkins went to buy cocaine with the money. (T. 188; H. 25-26). Shoemaker told Backus that he believed Jenkins released the purse to Torto because Backus told her that he already had the wallet. (H. 26). At that point, Backus invoked his right to remain silent and to an attorney. (H. 26, 30-31). The interview ceased. (*Id*.).

Jenkins agreed to cooperate against Backus in exchange for a plea to fourth degree grand larceny and a sentence of five years probation. (T. 203-206, 210-14). She was scheduled to be sentenced after trial. (T. 215). Neither the police nor the

district attorney's office promised her anything else in exchange for her testimony. (T. 203). Jenkins testified that she agreed to help Backus rob Torto because she was high on crack cocaine and alcohol. (T. 199, 205-207).

Backus was indicted on March 30, 2000 on two counts of second degree robbery and one count of fourth degree grand larceny. (Dkt. No. 8, Exh. A). A *Huntley*[4] hearing was held on September 1, 2000 to determine the admissibility of the oral statements made by Backus to Detective Shoemaker. (Dkt. No. 8, Exh. I, at 20-37). In a decision issued from the bench, the hearing court denied defense counsel's motion to suppress Backus's statements. (*Id*. at 34-37).

On September 6, 2000, Backus appeared before the court to discuss a possible plea agreement. (Dkt. No. 8, Exh. H, at 3-6). Backus told the court that he felt that counsel was not well prepared for trial, and requested a new attorney. He explained that he thought counsel could have made additional arguments and motions but did not. (*Id*. at 5-6). The court explained that counsel filed motions and made arguments, and pointed out that counsel was not ineffective simply because the court disagreed with his arguments. (*Id.* at 4-5). When Backus told the court he would plead guilty because he had no choice, the court refused to accept a plea. (*Id*.).

A jury trial was held from September 18 to 19, 2000. Backus was convicted of Robbery in the Second Degree (two counts)(N.Y. PENAL LAW §§ 160.10(1), (2(a)

---

4  *People v. Huntley,* 15 N.Y.2d 72, 204 N.E.2d 179, 255 N.Y.S.2d 838 (1965).

and Grand Larceny in the Fourth Degree (N.Y. PENAL LAW § 155.30(5)) and was

sentenced to an aggregate determinate term of ten years in prison.  (T. 342-45; Dkt.

No. 8, Exh. L, Sentencing ["S'] at 9-10). The Appellate Division, Third  Department

affirmed petitioner's conviction on January 23, 2003.  *People v. Backus,* 301 A.D.2d

866, 755 N.Y.S.2d 441 (3d Dep't 2003). (*See* Dkt. No 8, Exh. S). The New York Court

of Appeals denied leave to appeal on February 19, 2003. *People v. Backus,* 100

N.Y.2d 559, 795 N.E.2d 42, 763 N.Y.S.2d 816 (2003). (*See* Dkt. No. 8, Exhs. T, U).

This petition followed.

### III.  Discussion

### A.  Standard of Review

When reviewing a habeas petition, a federal court is limited to deciding

whether a conviction violated the Constitution, laws or treaties of the United States.

28 U.S.C. § 2241.  Relief does not lie for errors of state law.  *Estelle v. McGuire*, 502

U.S. 62, 67-68 (1991); *DiGuglielmo v. Smith*, 366 F.3d 130, 136-137 (2d Cir. 2004).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

petitioner may obtain habeas relief by showing that the state court's decision was

"contrary to, or involved an unreasonable application of, clearly established federal

law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1); *Carey v.*

*Musladin*, 127 S. Ct. 649, 653 (2006); *Campbell v. Burgess*, 367 F. Supp. 2d 376,

380 (W.D.N.Y. 2004).  "By 'contrary to,' the state court decision may be either

contrary to Supreme Court precedent on a question of law or the state court decision

is opposite to a relevant Supreme Court case with 'materially indistinguishable' facts."

7

*Johnson v. West*, No. 9:04-cv-751, 2007 WL 952058, at *2 (N.D.N.Y. Mar. 29, 2007), *quoting Williams v. Taylor*, 529 U.S. 362, 405-406 (2000).  A state court unreasonably applies federal law when the state court correctly identifies the governing legal rule in a particular case but applies the rule to the facts in an "objectively unreasonable" manner.  *Johnson,* 2007 WL 952058, at *2 (*quoting Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).  Although " 'some increment of incorrectness beyond error is required' " in order to grant a federal habeas application, that increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000); *see also Hawkins v. Costello*, 460 F.3d 238, 243 (2d Cir. 2006), *cert. denied* 127 S. Ct. 1267 (2007).  The state court's determination of a factual issue is presumed to be correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254 (e)(1); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005), *cert. denied* 546 U.S. 884 (2005); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

### B. Substance of Backus's claims

#### 1. Prosecutor misconduct

Petitioner makes two separate claims of prosecutor misconduct.  First, he claims in Ground One of his petition that the prosecutor failed to turn over certain photographs and the name of a witness before trial even though he asked for these in the omnibus motion.  Petitioner asserts that "[t]he outcome of the proceedings may

have been different had I (Petitioner) been informed of any and all evidence." (Dkt. No. 1, ¶12(A).  Second, Backus argues that the prosecutor entered into the plea agreement with Jenkins in exchange for false testimony, and permitted false testimony at trial.  (*Id*. at ¶12(C)).  Respondent argues that these claims are unexhausted, procedurally barred and without merit.  (Dkt. No. 8, Mem. at 7-8).

Backus never presented these claims to the state courts.  (See Dkt. No. 8, Exh. Q, App. Br.).  An application for a writ of habeas corpus may not be granted until a prisoner has exhausted all remedies available in state court unless there is an "absence of available state court corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254 (b).  To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively.  Procedural exhaustion requires that a petitioner raise all claims in the state court prior to raising them in a habeas petition.  Substantive exhaustion requires that a petitioner "fairly present" any constitutional claims to the state court.  *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)(*quoting Picard v. Connor*, 404 U.S. 270, 275 (1971)). A claim is deemed exhausted when no real avenue remains by which it could be raised.  *See Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001)(*citing Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994), *cert. denied* 514 U.S. 1054 (1995).

Petitioner cannot now raise these claims in a second direct appeal, because in New York a defendant is "entitled to one (and only one) appeal to the Appellate Division."  *Aparicio*, 269 F.3d at 91.  It would be futile for petitioner to raise them in a

motion to vacate his conviction under New York's Criminal Procedure Law ("CPL") §

440.10 because New York law prohibits collateral attacks on a conviction when the

defendant unjustifiably failed to raise the issue on direct appeal.  N.Y. CRIM. PROC.

LAW § 440.10 (2)(c).  Since no remaining avenue exists in which petitioner could

raise these claims, they are deemed exhausted but procedurally defaulted.  *Aparicio*,

269 F.3d at 90; *Spence v. Superintendent, Great Meadow Corr. Fac*., 219 F.3d 162,

170 (2d Cir. 2000).

> This Court may review these claims only if Backus demonstrates cause for the

default and resulting prejudice, or that the failure of the federal court to review the

claim will result in a "fundamental miscarriage of justice" *i.e.*, that the petitioner is

innocent.  *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Coleman v. United*

*States*, 501 U.S. 722, 748-750 (1991).  To establish "cause" sufficient to excuse a

procedural default, a petitioner must show that some objective external factor

impeded his or her ability to comply with the relevant procedural rule.  *Coleman*, 501

U.S. at 753, *Restrepo v. Kelly*, 178 F.3d 634, 639 (2d Cir. 1999).  When a petitioner

has failed to establish adequate cause for his procedural default, the court need not

determine whether he suffered prejudice, since federal habeas relief is generally

unavailable as to procedurally defaulted claims unless both cause and prejudice are

demonstrated.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, No.

03-cv-0461, 2006 WL 1977435 at *6 (N.D.N.Y. Mar. 21, 2006)(McCurn, S.J.).

> Backus appears to argue that these claims were not presented to the state

courts because appellate counsel was ineffective: "[t]he correspondence between my

10

appointed Attorneys was that their discretion was their opinions" [sic]. (Dkt. No. 1, ¶13).  Backus also claims that his "advice" and "knowledge" of the case was somehow ignored in the state courts as a result.  (*Id*.)  Finally, Backus claims he was denied effective assistance "Through the Entire Proceedings."  (Id. at ¶12(D)).  The ineffectiveness of counsel for not raising or preserving a claim in state court will be sufficient to show cause for a procedural default only when counsel was so ineffective that the representation violated the petitioner's Sixth Amendment right to counsel.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Aparicio,* 269 F.3d at 91. Backus's apparent challenge to the effectiveness of appellate counsel as a ground for cause is unexhausted and, in any event, is without merit.  (*See* Section III(B)(3), *infra).*  Because Backus's claim is meritless, it may not serve as "cause" for a procedural default.  *Aparicio,* 269 F.3d at 91-92.  Since Backus has not established cause, the court need not decide whether he suffered actual prejudice, since, as previously stated, federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *See Stepney,* 760 F.2d at 45; *Staley v. Greiner*, No. 01 Civ. 6165, 2003 WL 470568, at *7 (S.D.N.Y. Feb. 6, 2003).  Backus has also failed to present any new evidence that he is "actually innocent" of the crimes for which he was convicted.  *See Schulp v. Delo*, 513 U.S. 298, 327 (1995).  Accordingly, the procedural default bars federal review of these claims.

Even if Backus's claims were not procedurally barred, no relief is due because they are without merit. The Due Process Clause of the Fourteenth Amendment

guarantees defendants the right to a fair trial.  U.S. Const. Amend. XIV, §1.

Prosecutorial misconduct violates this due process right when the misconduct alleged

is so severe and is of sufficient significance to infect the trial resulting in the denial of

the defendant's right to a fair trial.  *Greer v. Miller*, 483 U.S. 756, 765 (1987); *Blissett*

*v. Lefevre,* 924 F.2d 434, 440 (2d. Cir. 1991), *cert. denied* 502 U.S. 852 (1991);

*Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir.1990).  The alleged misconduct must

be placed into context and the court should consider the severity of the alleged

misconduct, the curative measures taken, and the likelihood of conviction absent any

misconduct.  *Cunningham v. Bennett*, 02-CV-4635, 2005 WL 1162475, at *7

(E.D.N.Y. 2005). The court should then determine if the petitioner has shown actual

prejudice in light of the totality of the circumstances surrounding the trial court

conviction.  *Samuels v. Mann*, 13 F.3d 522, 526-527 (2d Cir. 1993), *cert. denied* 513

U.S. 849 (1994).

### i.  Failure to disclose photographs and the name of a witness

One way a prosecutor's conduct can violate due process is by failing to turn

over evidence that is favorable to the defense because it is material to guilt or

punishment.  *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Brady v.*

*Maryland*, 373 U.S. 83, 86-87 (1963).  "However, not every failure to do so

constitutes a "true" *Brady* violation." *Thomas v. West*, No. 03 CIV. 1443, 2007 WL

541476, at *13 (S.D.N.Y. Feb. 22, 2007)(citing *Strickler v. Greene*, 527 U.S. 263,

280-82 (1999) and *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  To establish

a *Brady* violation, Backus must show that: (a) the evidence in question was favorable

to him, either because it was exculpatory or impeaching; (b) the prosecutor

suppressed the evidence, either willfully or inadvertently; and (c) prejudice ensued.

*Strickler*, 527 U.S. at 281-82. Prejudice results when there is a reasonable probability

that the outcome of the trial would have been different had the evidence been

disclosed. *Id.* at 281.

A petitioner bears the burden of proving that the prosecution withheld material

information. *Harris v. United States*, 9 F. Supp. 2d 246, 275 (S.D.N.Y. 1998).

"Conclusory allegations that the government 'suppressed' or 'concealed' evidence do

not entitle [the petitioner] to relief." *Id.* (quotations omitted). *See Van Gorden v.*

*Superintendent*, No. 03-CV-1350, 2007 WL 844901, at *8 (N.D.N.Y. Mar. 19,

2007)(Mordue, C.J.)(unsupported, unspecified *Brady* claim dismissed); *Mallet v.*

*Miller*, 432 F. Supp. 2d 366, 378 (S.D.N.Y. 2006)(*Brady* claim dismissed where

supported only by conjecture); *Skinner v. Duncan*, No. 01-cv-6656, 2003 WL

21386032 at *25 (S.D.N.Y. Jun. 17, 2003)(*Brady* claim failed because petitioner

provided no evidence in support of it); *Ferguson v. Walker*, 00 Civ. 1356, 2002 WL

31246533 at *13 (S.D.N.Y. Oct. 7, 2002)(Petitioner's "claim of withheld *Brady*

material is without evidence and speculative and must be rejected.").

The only photographs admitted at trial were those of the victim's injuries. (T.

146-49).  Backus's argument is not that the photographs were suppressed by the

prosecutor.  Rather, his claim is that the photographs were not disclosed soon

enough.  Backus has not produced any evidence in support of this bald assertion. In

fact, the record suggests the opposite, because counsel did not object to their

admission, or make any claim that he was not provided with the photographs at an earlier time.  (T. 149).  In any event, there is no requirement that evidence be disclosed well in advance of trial.  Due process requires only that a defendant receive potential *Brady* material before it is too late for him to make beneficial use of it at trial. *United States v. Rodriguez,* 496 F.3d 221, 226 (2d Cir. 2007) (citing Leka v. Portuondo, 257 F.3d 89, 100 (2d Cir. 2001).

Even if Backus had produced evidence that the photographs were withheld, he would not be entitled to relief because they are not exculpatory. The photographs depicted scrapes and bruises the victim suffered to her cheek, lip, knee and thigh, thereby supporting the state's theory that the victim suffered physical injury - a necessary element of the second degree robbery charge under count two of the Indictment.  (T. 146-49). Counsel's theory was not that the victim suffered no injury, but simply that the injuries were so minor that they did not constitute the legal definition of "physical injury," and made that point by cross-examining the nurse who provided treatment.  (T. 178-80).

Petitioner also asserts that he was unaware of the name of the nurse prior to trial, and suggests that, had he known her name sooner, the outcome might have been different. The only nurse who testified was Kristen Hoyt.  (Dkt. No. 8, Exh. K, at 174-79).  Backus has not produced any evidence in support of his claim that he did not know Hoyt's name prior to trial.  The record shows that her name was known at least as early as jury selection (Dkt. No. 8, Ex. J, at 18). In any event, counsel cross-examined this witness and elicited information favorable to his argument that the

14

victim's injuries did not rise to the level of "physical injury," including that the victim was not admitted to the hospital, that she was alert and oriented, her breathing was normal, her skin was normal aside from her minor injuries, and the only treatment was the application of cold packs.  (Dkt. No. 8, Ex. K, at 178-79). Thus, since counsel effectively cross-examined this witness and elicited information from her favorable to the defense, Backus cannot show he suffered prejudice.  This claim should be dismissed.

### ii.  The cooperation agreement

Petitioner claims in Ground Three of his petition that the prosecutor entered into a plea agreement with Jenkins in exchange for false testimony, resulting in his unjust conviction.  (Dkt. No. 1, ¶12(C)).  When the government enters into a cooperation agreement with one of its witnesses, the prosecutor must disclose the agreement to the defense and may not knowingly solicit false trial testimony about the deal or allow false testimony to go uncorrected if it appears.  *Giglio*, 405 U.S. at 154-55; *United States v. Agurs*, 427 U.S. 97, 103-04; *see also Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Jenkins v. Artuz*, 294 F.3d 284, 292-93 (2d Cir. 2002); *People v. Sibadan*, 240 A.D.2d 30, 34, 671 N.Y.S.2d 1, 4 (1st Dept. 1998)("[t]he prosecution's duty to disclose *Brady* material applies to evidence affecting the credibility of a government witness, including evidence of any agreement or promises of leniency given to the witness in exchange for favorable testimony against an accused") (citations omitted), *leave denied*, 92 N.Y.2d 861, 677 N.Y.S.2d 91 (1998) (TABLE).

Here, the prosecutor disclosed the cooperation agreement to defense counsel in a response to counsel's omnibus motion dated June 21, 2000, well in advance of the September trial.  (Dkt. No. 8, Exh. E, at ¶32).  Pursuant to the agreement, Jenkins was required to provide "full, complete, honest and truthful testimony" at all stages of the proceedings against Backus in exchange for a plea to fourth degree grand larceny and a sentence of five years probation.  (*Id*.).

Although Backus claims Jenkins testified falsely at trial, the record does not support that claim.  There were two areas of inconsistency developed on cross-examination between Jenkins's grand jury testimony and her trial testimony. The first inconsistency related to Backus's role in the robbery. On direct examination, Jenkins testified that Backus told her to grab Torto's purse if she refused to give Jenkins gas money.  (T. 200).  On cross-examination, defense counsel asked Jenkins if she remembered testifying at grand jury that Backus "didn't ask me to snatch her purse." (T. 212).  Jenkins acknowledged that she gave that response, but explained that Backus told her to "grab" the purse, and that grabbing was "different from snatching." (T. 211).  On redirect examination, Jenkins testified that she had a ninth grade education and did not read well, and did not understand the grand juror's question when he asked if Backus told her to "snatch" the purse.  (T. 220-21).  She explained that Backus did not use the word "snatch," and reiterated that he told her to "grab" the purse.  (T. 221).

The second inconsistency related to Jenkins's background.  Counsel asked Jenkins if she remembered being asked by the prosecutor at grand jury "Had you

16

ever done anything like this before?" and responding, "Never in my whole life, I've never been in trouble in my life." (T. 216). Jenkins acknowledged the question and answer and explained that she meant that she had never robbed anyone before. (*Id*.). She acknowledged that she had been in trouble before and had two prior convictions for disorderly conduct in 1989 and 1993. (T. 217-219). On redirect examination, Jenkins further explained that when asked at grand jury whether she had been in trouble, she interpreted the question to mean whether she had committed a robbery before. (T. 221-22).

Backus has not established that Jenkins's trial testimony was actually, intentionally false, or that the prosecutor knowingly solicited false trial testimony or permitted false testimony to go uncorrected. *Giglio*, 405 U.S. at 154-55; *Agurs*, 427 U.S. at 103-04. Jenkins testified truthfully about the terms of her plea agreement. (T. 202-04, 213-16). When inconsistencies unrelated to the plea agreement appeared, the prosecutor took steps to correct them. (T. 220-22). Jenkins's testimony establishes, at worst, that she misinterpreted questions asked of her at the grand jury. Her testimony corroborated Backus's statement to police as well as Torto's testimony and that of Forkey, the eye-witness. (*See, e.g.*, T. 108-18, 139-54, 159-62, 187-89). Jenkins was extensively cross-examined, and defense counsel pointed out the inconsistencies in her testimony in his summation. (T. 255-57). The jury apparently resolved any inconsistencies in favor of the state. The petition on this ground should be denied.

### *2. Suppression - Oral Statement*

Backus claims in Ground Two of his petition that Detective Shoemaker told him that "if I ran or planned on it that they (the police) had guns," that he knew Backus was involved in a robbery, that Backus was not in trouble, and that if Backus gave Shoemaker the name of the person who committed the robbery, Backus was free to go.  (Dkt. No. 1, ¶12(B)).  He also claims that after he made an oral statement, Detective Shoemaker started accusing him, and Backus refused to answer more questions and requested counsel.  (*Id*.).  Finally, Backus claims that Detective Shoemaker knew he was represented by counsel on an unrelated charge for which he had not yet been sentenced when he asked Backus to accompany him to the police station.  (*Id.*).

Backus is apparently making two separate arguments: first, that he was coerced into making his oral statement, and second, that he should not have been questioned at all because Detective Shoemaker knew he had an attorney on an unrelated matter.  Respondent argues that, under either theory, the claim is unexhausted, procedurally barred and without merit.  (Dkt. No. 8, Mem. at 7-8, 11-13).

Petitioner did not fairly present this claim, in any form, on direct appeal or in a post-conviction motion in the state courts. (*See* Dkt. No. 8, Exh. Q); *Dorsey,* 112 F.3d at 52.  He cannot now file a second direct appeal, and he cannot properly raise this claim in a CPL § 440 motion, because, as previously noted, New York law generally prohibits collateral attacks on a conviction when the defendant unjustifiably failed to

raise the issue on direct appeal.  N.Y. CRIM. PROC. LAW §440.10(2)(c), (3)(a); *Aparicio*, 269 F.3d at 91; *Bossett,*  41 F.3d at 829.  This claim is therefore deemed exhausted but procedurally defaulted. *Aparicio,* 269 F.3d at 90; *Spence,* 219 F.3d at 170; *Senor v. Greiner*, No. 00-CV-5673, 2002 WL 31102612, at *10 (E.D.N.Y. Sept. 18, 2002). As noted above, Backus has failed to sufficiently establish cause and prejudice to excuse the procedural default, and he has not presented any new evidence that he is "actually innocent" of the crimes for which he was convicted.  *See Schulp,* 513 U.S. at 327.  Accordingly, the procedural default bars federal review of petitioner's claim.

Even if this claim was not procedurally barred, petitioner would not be entitled to relief. On habeas review, whether a statement was voluntary is a legal question that requires independent federal determination "based on the totality of the circumstances surrounding the confession." *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir.1997). *See Walker v. Goord*, 427 F. Supp. 2d 272, 275 (W.D.N.Y. 2006). That review includes a determination of whether the waiver of *Miranda* rights was valid. The inquiry into the circumstances surrounding the confession, including the length and circumstances of the interrogation and a defendant's prior experience with the legal system, is "purely factual, and the state court's answer to it is afforded a presumption of correctness" under 28 U.S.C. § 2254(e)(1).  *Holland v. Donnelly*, 216 F. Supp. 2d 227, 231 (S.D.N.Y. 2002), *aff'd* 324 F.3d 99 (2d Cir. 2003), *cert. denied* 540 U.S. 834 (2003).  *See Dallio v. Spitzer*, 170 F. Supp. 2d 327, 338 (E.D.N.Y. 2001), *aff'd* 343 F.3d 553 (2d. Cir. 2003), *cert. denied* 541 U.S. 961 (2004). Petitioner

bears the burden of establishing that his rights were violated.  *Whitaker v. Meachum*, 123 F.3d 714, 716 (2d Cir. 1997).

Here, Backus has not met his burden. A *Huntley* hearing was held to determine the admissibility of his oral statements.  The hearing court found that Backus was not in custody on November 16, 1999 when Detective Shoemaker asked Backus to accompany him to the police station.  (H. 34-35). The court found that, in any event, Backus was "properly advised of his Miranda rights" and "agreed to waive those rights and agreed to voluntarily speak" with Shoemaker.  (H. 35).  It further found that "Detective Shoemaker did not at any time engage in any improper conduct, nor did he make any promises to defendant in order to induce the defendant in waiving his Miranda rights."  (*Id*. at 35-36).  Finally, the court noted that Backus eventually invoked his right to silence, and that Shoemaker "quite properly at that juncture ceased all interrogation."  (H. 35).  The hearing court denied Backus's motion (H. 36).

The hearing court's findings are fairly supported by the record before this Court, and thus, its findings are entitled to the presumption of correctness. (*See* H. 20-30); *Thompson*, 516 U.S. at 111-12; *Holland*, 216 F. Supp. 2d at 231.  The record is completely devoid of any indication that Backus's statements were the result of coercion, trickery or threats.  Backus fails to allege, and there is no evidence from the record, that the hearing court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law."  28 U.S.C. § 2254 (d)(1); *Aparicio,* 269 F.3d at 93.  Looking at the totality of the circumstances, the

Court agrees with the hearing court and concludes that Backus's waiver of his constitutional rights and subsequent oral confession was the result of his free and rational choice,  and when Backus invoked his rights to silence and to counsel, the interview properly ceased.  *See Nelson*, 121 F.3d at 833.

To the extent that Backus is claiming a violation of his right to counsel under the Sixth Amendment, that claim also does not warrant habeas relief.  This claim is rooted in the assertion that Detective Shoemaker knew Backus had an attorney on an unrelated charge and proceeded to question him despite that knowledge. (Dkt. No. 1, ¶12(B)). In support of that claim, Backus asserts that Shoemaker "knew I was getting sentenced in January 2000, on an unrelated charge." (*Id*.). There is nothing in the record, however, that shows Shoemaker knew Backus had counsel.  Even if Backus had counsel on an unrelated pending charge, that fact had no legal significance as it related to Backus's voluntariness claim, because a defendant does not have an "absolute right to counsel simply because he is represented by counsel on an unrelated case." *Ballew v. Walker*, No. 97-CV-0349, 2001 WL 118580, at *3 (W.D.N.Y. Feb. 9, 2001). Moreover, New York's prohibition against questioning a suspect about an unrelated crime in the absence of his attorney extends only to a defendant who is in custody for a crime for which he has counsel.  Since Backus was not in custody on the unrelated charge, the prohibition did not apply.  *See People v. Burdo*, 91 N.Y.2d 146, 690 N.E.2d 854, 667 N.Y.S.2d 970 (1997); *People v. Stewart*, 88 N.Y.2d 496, 670 N.E.2d 214, 646 N.Y.S.2d 974 (1996); *People v. Bing*, 76 N.Y.2d 331, 558 N.E.2d 1011, 559 N.Y.S.2d 474 (1990).  Finally, the Sixth Amendment right

21

to counsel is offense-specific and does not attach until formal criminal proceedings

are initiated.  *Texas v. Cobb*, 532 U.S. 162, 167-68 (2001); *McNeil v. Wisconsin*, 501

U.S. 171, 175-76 (1991).  Since in the robbery matter no formal criminal proceedings

had been initiated against Backus at the time of his statement, Backus's Sixth

Amendment rights were not violated when the police interviewed him. *See, e.g. Kirby*

*v. Illinois*, 406 U.S. 682, 689 (1972)(formal proceedings include formal charge,

preliminary hearing, indictment, information, or arraignment). This claim should be

dismissed.

### 3.  *Effectiveness of Counsel*

Petitioner claims in Ground Four of his petition that he received ineffective

assistance of counsel. (Dkt. No. 1, ¶12(D)).  Specifically, petitioner claims that trial

counsel was ineffective because he and Backus "did not agree on anything, he

insisted I go to trial, and I had even mentioned to the Judge I would like new counsel

and was denied."  (*Id.*).  Backus also states that he received ineffective assistance

"Through the Entire Proceedings," implicating a claim that appellate counsel was

ineffective.[5]  Respondent argues that Backus's claims of ineffective counsel are

---

[5]  Because of the petitioner's *pro se* status, the Court will construe the
petition liberally in his favor, and address the implied claim of ineffective assistance
of appellate counsel.  *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir.
2004)(stating that the pleadings of a *pro se* litigant must be construed liberally);
*Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir.1983) ( "[D]ue to the *pro se*
petitioner's general lack of expertise, courts should review habeas petitions with a
lenient eye, allowing borderline cases to proceed. These views are wholly
consistent with Supreme Court doctrine, which confirms that pro se complaints
must be liberally construed and their allegations accepted as true.") (citations
omitted); *Carter v. Perlman*, No. 03-CV-4200, 2006 WL 891089, at *3 (E.D.N.Y.
Apr. 6, 2006) (citing *Chang v. United States*, 250 F.3d 79, 86 n. 2 (2d Cir.2001)).

unexhausted and without merit.  (Dkt. No. 8 at 7-8, 10-11).

Petitioner's claims of trial counsel ineffectiveness were never raised in the state courts. The basis for these claims is not apparent on the face of the record and, accordingly, petitioner could still raise them in a CPL § 440.10 motion.  They are therefore unexhausted. *Reyes,* 118 F.3d at 139 (*citing People v. Harris*, 109 A.D.2d 351, 491 N.Y.S.2d 678, 687 (2d Dep't.1985) (holding that trial record was insufficient to require that an ineffective assistance of counsel claim relating to alleged faulty legal advice be brought on direct appeal), *lv. denied*, 66 N.Y.2d 919, 489 N.E.2d 779, 498 N.Y.S.2d 1034 (1985)).

Similarly, to the extent that Backus's claim implicates the effectiveness of appellate counsel, that claim is also unexhausted.  New York State law has a specific procedure, a state writ of error coram nobis petition, for raising a claim that appellate counsel was ineffective. *See Hust v. Costello*, 329 F. Supp. 2d 377, 379 (E.D.N.Y. 2004); *Jackson v. Moscicki*, 99 Civ. 2427 & 9746, 2000 WL 511642 at *9 (S.D.N.Y. April 27, 2000); *People v. Bachert*, 69 N.Y.2d 593, 598-99, 509 N.E.2d 318, 516 N.Y.S.2d 623 (1987). The coram nobis petition is the only way to exhaust a claim that appellate counsel was ineffective for federal habeas purposes.  *Garcia v. Scully*, 907 F. Supp. 700, 706-707 (S.D.N.Y. 1995).  Backus failed to raise any appellate counsel ineffectiveness claim through a writ of error coram nobis to the Third Department and, because there is no time limit for filing a writ of error coram nobis in state court, that procedure is still available as a state remedy.  *Id.* Therefore, this

claim is also unexhausted. 28 U.S.C. § 2254 (b); *Dorsey,* 112 F.3d at 52.

A court may, in its discretion, review and deny unexhausted claims on the merits if they are "plainly meritless" (*Rhines v. Weber*, 544 U.S. 269, 277 (2005)) or "patently frivolous." *McFadden v. Senkowski*, 421 F. Supp. 2d 619, 621 (W.D.N.Y. 2006); *Wheeler v. Phillips*, No 05-cv-4399, 2006 WL 2357973, at *5 (E.D.N.Y. Aug. 15, 2006).   Since petitioner's unexhausted claims of counsel ineffectiveness are meritless, the Court will address them.  28 U.S.C. § 2254 (b)(2).

The well-established Supreme Court precedent provides that a claim of ineffective assistance of counsel is sustainable only if counsel's representation fell below an objective standard of reasonableness, and there is a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir. 1992), *cert*. *denied*, 508 U.S. 912 (1993). In applying this test, a reviewing court must be "highly deferential" and presume that counsel's conduct falls within the range of reasonable performance. *Strickland*, 466 U.S. at 689.  Any counsel errors must be considered in the aggregate, rather than in isolation. *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001). The failure to make meritless arguments or objections cannot constitute ineffective assistance. *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999), *cert*. *denied,* 531 U.S. 811 (2000).

Analyzed under these standards, Backus's claims that trial counsel was ineffective fail.  The record shows that counsel was more than adequately prepared for Backus's trial, and that he vigorously represented Backus in all respects.  Counsel

filed appropriate motions, including motions to dismiss on speedy trial grounds, to exclude Jenkins's testimony, to suppress Backus's statements, and to dismiss the indictment following the prosecutor's opening statement. (Dkt. No. 8, Exhs. C; D; H. 6-8, 12-13, 17-18, 31-34, 37-41, 42-46; T. 100-04, 156-62).  Counsel vigorously cross-examined witnesses (T.122-24, 129, 156-62, 178-80, 191, 205-19).  Counsel moved for a trial order of dismissal at the close of the People's case, arguing that the injury suffered by the victim did not rise to the level of "physical injury" and that there was insufficient corroboration of Jenkins's testimony. (T. 224-29).  Counsel argued in summation that Jenkins was responsible for the robbery and that she testified against Backus in order to ensure that she did not go to prison (T. 250-66).  He also argued that the victim was Backus's friend, and he was "just as shocked as" the victim that Jenkins attacked and robbed her.  (*Id*. at 263). Finally, counsel argued extensively at sentencing that Backus should receive the minimum sentence, pointing out his history of substance abuse, that he was remorseful, and that he had health problems.  (S. 3-7).

Nonetheless, Backus argues that counsel was ineffective because he and counsel "did not agree on anything." (Dkt. No. 1, Pet. at ¶12(D)).  He does not, however, set forth with any specificity the areas of disagreement, nor does he explain how the outcome would have been different absent these unspecified disagreements.  Therefore, this claim is too vague to state a basis for habeas relief. *Brown v. New York*, No. 04-CV-1087, 2006 WL 3085704, at *7 (E.D.N.Y. Oct. 30,

2006)(vague and conclusory allegations are insufficient to state a viable claim for habeas relief); *Skeete v. New York*, No. 98-CIV-5384, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003)("vague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief.").

To the extent that Backus's claim suggests a disagreement with counsel's strategy, "[a] petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy." *Bussey v. Greiner*, No. 02 CIV. 8642, 2007 WL 2589454, at *8 (S.D.N.Y. Aug. 28, 2007). *See Strickland*, 466 U.S. at 690-91 (strategic choices of counsel are "virtually unchallengeable"). Similarly, counsel is not ineffective simply because the chosen strategy failed. *Pratt v. Upstate Corr. Fac.*, 413 F. Supp. 2d 228, 244 (W.D.N.Y. 2006). This claim does not warrant habeas relief.

The record also refutes Petitioner's claim that counsel insisted that he proceed to trial. Petitioner told the trial court on September 6, 2000, that he had "no alternative but to take a plea" because he felt counsel was not adequately prepared for trial. (Dkt. No. 8, Exh. H, at 3). Petitioner further claimed that counsel's "view of the law wasn't representing me to the bests [sic] of his ability to the law's ability." (*Id*. at 4). The trial court pointed out that counsel "filed everything he could think of and case law to support his arguments," and that simply because the court did not agree with counsel did not mean counsel was not effectively representing petitioner. (*Id*.). The court asked Petitioner to be more specific in his claims, but Petitioner's

26

responses remained general.  (*Id*. at 5).  Ultimately, the court rejected Petitioner's

attempt to plead guilty, explaining that he could not take a plea if Petitioner was

doing so because he felt pressured.  (*Id*. at 5-6). This exchange suggests that

Backus wanted to go to trial, not that counsel forced him to do so.  In any event,

based on the totality of the evidence against him, including his statement to police,

Backus cannot demonstrate prejudice based upon trial counsel's performance.  The

record does not support Backus's claim that trial counsel was ineffective, and,

accordingly, this claim should be dismissed.

Finally, Backus appears to challenge the effectiveness of appellate counsel,

based upon his assertion that he was denied effective assistance "though the entire

proceedings." (Dkt. No. 1, ¶12(D)).  To establish ineffective assistance of appellate

counsel, a petitioner must demonstrate that (i) appellate counsel's performance fell

below an objective standard of professional reasonableness, and (ii) but for appellate

counsel's "unprofessional errors," the results of the proceedings would have been

different, *i.e.,* the error caused prejudice to the petitioner.  *Smith v. Robbins*, 528 U.S.

259, 285-86 (2000); *Strickland*, 466 U.S. at 688, 694.  When challenging the

effectiveness of appellate counsel, a petitioner must show that counsel "omitted

significant and obvious issues while pursuing issues that were clearly and

significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994), *cert*.

*denied* 513 U.S. 820 (1994).  *See Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000),

*cert*. *denied* 531 U.S. 1116 (2001).  Counsel is required to use professional judgment

when deciding to concentrate on a few key issues while eliminating weaker

arguments, and is not required to advance every argument urged by the petitioner. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983); *Sellan v. Kuhlman,* 261 F.3d 303, 317 (2d Cir. 2001).

Here, the record shows that appellate counsel filed a 10-page brief in which she advanced three claims she believed had the greatest chance of success. Counsel also put together a seven-volume appendix in support of those claims.  (Dkt. No. 8, Exh. Q, Ex. N).  Moreover, counsel likely recognized that there was no merit to the claims now advanced by Backus.  Appellate counsel acted reasonably in not raising these issues on appeal.  *Evitts*, 469 U.S. at 394; *Jones*, 463 U.S. at 751-52. Accordingly, Backus's claim that appellate counsel was ineffective should be denied.

## IV.  Conclusion

**WHEREFORE**, based upon the foregoing, it is hereby

**RECOMMENDED**, that the petitioner for a writ of habeas corpus (Dkt. No. 1) be

**DENIED** and **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to

file written objections to the foregoing report. Such objections shall be filed with the

Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10)

DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P.

72, 6(a), 6(e); *Roldan v. Racette*, 984 F.2d 85 (2d Cir.1993) (*citing Small v. Sec'y of*

*Health and Human Servs.*, 892 F.2d 15 (2d Cir.1989)).

**IT IS SO ORDERED.**

DATE: January 8, 2008

George H. Lowe
United States Magistrate Judge